OPINION OF THE COURT
John M. Regan, J.
On its face, this is a simple action at law under a written contract for a judgment for a sum of money only — to wit, $2,320. Actually, upon closer examination of the issues raised by the proofs which the court heard on April 13, 1984, the case implicitly involves a great deal more.
Patricia Stefanucci sues to recover a money judgment for support arrearages due under an agreement dated December 1, 1980. The December 1, 1980 agreement modified a July 21, 1978 property settlement agreement between these same parties, which prior property settlement agreement was incorporated, but not merged, into a decree of divorce from the Supreme Court dated July 24, 1978.
In May, 1979, however, Patricia Stefanucci challenged that divorce decree of July, 1978, and the property settlement agreement it contained, in the Supreme Court, alleging that her husband had obtained it by fraudulent misrepresentations.
In the proceedings challenging the original decree for fraud, both parties retained attorneys and, after lengthy *99 negotiations, they signed the compromise agreement of December 1, 1980, on which this action is básed. During that time, John Stefanucci had retained Sally Smith, Esq., as his attorney, and the plaintiff had retained Sharon Clark, Esq. (then a member of the firm currently representing her in this case) as her attorney.
Therefore, the compromise agreement, which is the subject matter of the instant litigation, actually settled a pending Supreme Court proceeding to vacate a decree of divorce in that court, and to set aside a property settlement agreement incorporated in that decree on the grounds of fraud.
The 1978 property settlement agreement provided, in pertinent part, as follows: “3. John A. Stefanucci during his lifetime shall pay to Patricia Holland Stefanucci, Twenty-Five Dollars ($25) per week as long as he is gainfully employed or until Patricia Holland. Stefanucci becomes self-supporting and gainfully employed or until Patricia Holland Stefanucci remarries.”
The 1980 compromise agreement provided in pertinent part, as follows:
“1. Paragraph 3 of the original agreement is modified in that John A. Stefanucci, shall pay to Patricia Holland Stefanucci the sum of forty dollars ($40.00) per week as and for her support, maintenance and alimony, until the happening of the first of the following events:
“1. Patricia Holland Stefanucci undergoes a ceremony of marriage in any jurisdiction, whatsoever regardless of whether that marriage is legally valid;
“2. She lives and cohabits with any person of the opposite sex; or resumes full-time employment;
“3. The death of Patricia Holland Stefanucci * * *
“4. Except as specifically modified herein, the original Property Agreement between the parties, signed by John A. Stefanucci on the 21st day of July, 1978 and by Patricia Stefanucci on the 21st day of July, 1978, is hereby reaffirmed.”
The compromise agreement did not specifically repeal the limitation on the duty to pay support in favor of John *100 Stefanucci set out in the language “as long as he is gainfully employed” in the 1978 agreement. On the other hand, it did not repeat that limitation either. Those words of limitation appear verbatim only in the 1978 agreement. However, paragraph 4 of the 1980 compromise agreement did reaffirm and reincorporate the terms of the original 1978 agreement “except as specifically modified”.
In accordance with UCCA 902 (subd [a], par 1), plaintiff commenced this action by means of an indorsed summons dated September 28,1983. On October 11,1983, defendant answered with a general denial. Plaintiff’s bill of particulars alleges arrearages in weekly support obligations due Patricia Stefanucci under paragraph 3 of the original agreement, and paragraphs 1 and 4 of the compromise agreement, and it attaches copies of both documents.
With the pleadings in this posture, the case came on for trial, without a jury, on April 13, 1984.
At the trial, the principal issue which soon emerged was the interpretation of the language in the documents in respect to the limitation on the duty to pay support in favor of John Stefanucci contained in the phrase, “as long as he is gainfully employed”. This issue emerged because John Stefanucci had retired from Eastman Kodak Co. on March 7,1983 and he was no longer “gainfully employed” thereafter.
The trial defense, accordingly, proceeded in the alternative: (1) the contract documents, properly interpreted, still retained the original limitation exonerating John Stefanucci from paying support after he was no longer “gainfully employed”; and (2) if the contract documents did not still retain that limitation, then, alternatively, the court should reform the contracts since the parties in fact intended, at the time they signed them, that that limitation would still apply.
Under UCCA 208 (subd [c]), this court has equity jurisdiction to hear an action to reform a contract so long as it is the contract “upon which the plaintiff’s cause of action is founded”, and so long as the defendant has pleaded it as a counterclaim.
While both parties had been continually aware of the defense of reformation, the defendant had not pleaded any *101 such counterclaim. Motions made during the trial to amend the pleadings to conform to the proof and to plead the counte.-claim in reformation are on the record. This court has reserved decision on these motions, but has ordered exemplary written pleadings filed in any event. (See UCCA 902, subd [a], par 2, cl [e].) This was done, and the case was submitted as of May 11, 1984, for decision.
Only superficially is this an action for a sum of money only. In fact, it is an action for a declaratory judgment, which seeks binding interpretations of ambiguous paragraphs in vritten documents. For the determination of whether to grant the plaintiff a money judgment depends directly on whether Mr. Stefanucci’s duty to pay support terminated on his retirement. The defense is also in two parts: (1) a demurrer, which legally also seeks interpretation of the contract documents (but opposite to that which the plaintiff seeks); (2) alternatively, a decree in reformation, that is, a decree rewriting the documents to reflect what the defendant alleges was the true intent of the parties at the time they signed them.
Under CPLR 3001, only the Supreme Court has jurisdiction to hear declaratory judgment actions. Incidental to declaratory relief, a money judgment is proper. (Silverstein v Continental Cas. Co., 23 AD2d 801, affd 17 NY2d 845.)
What this case establishes is primary jurisdiction founded upon what is solely incidental relief — the money judgment — in order to obtain, through res judicata effect and UCCA 208 (subd [c]), declaratory and equitable relief in a matrimonial action, which relief ordinarily would be available only in the Supreme Court. Moreover, the effect of this court’s judgment, and decree in reformation, if any, would be an interpretation, and possible modification, of the Supreme Court decree of divorce granted in July, 1978.
New York’s court system, and the finite jurisdictional areas article VI of the New York Constitution has bestowed on each court, have constantly created artificial problems in allocating multifaceted and complex litigation to the “proper” court. Nowhere is this allocation problem more obvious than in matrimonial cases, where the Supreme Court, the Family Court, the Criminal Courts, and *102 the Civil Courts have overlapping jurisdiction to deal with different parts of the very same set of operative facts. This case merely serves as a classic illustration.
For there is no doubt, that under the UCCA, and section 17 of article VI of the Constitution, Rochester City Court has plenary jurisdiction to hear and determine the issues in this case, including all the equitable issues. The real question is: Should this court hear and determine this case?
Whether a court with jurisdiction may decline to exercise that jurisdiction, and/or send a case to another court of competent jurisdiction to hear and determine it is not an issue frequently raised in lower courts, which have little or no transfer powers. (See CPLR 325, 326; NY Const, art VI, § 19.j[1]
Nevertheless, such cases will arise and they will require the exercise of the nicest judicial protocol. I find this is such a case.
In Braunstein v Braunstein (72 AD2d 682) that court reversed an order of Supreme Court, New York County, which had denied an application to transfer a case very similar to this from New York City Civil Court to the Supreme Court. In Braunstein, the plaintiff sought recovery of a $2,100 money judgment for breach of a separation agreement. The answer sought modification of the agreement on the basis of changed circumstances — to wit, the husband’s recent severe physical disabilities. The Braunstein court noted that the Civil Courts of the City of New York had equitable jurisdiction, but that, notwithstanding, the plea for modification “is a matter over which the Supreme Court, and not the Civil Court, has jurisdiction” (see 72 AD2d 682, citing McMains v McMains, 15 NY2d 283).
This court reads Braunstein (supra) with a somewhat broader scope. That case did not turn solely on legal points of jurisdiction. It was rooted, rather, in an understanding that technicalities of jurisdiction must not be manipulated so as to subvert the over-all constitutional and legislative *103 design of the present court system. Declaratory judgments, and equitable decrees generally, are the subject matter of Supreme Court jurisdiction, as are matrimonial cases and the long-term questions of duty and status those cases generate. To settle these types of questions in an action for a money judgment is to permit the part to govern the whole. Money judgment actions are not capable of this, nor are they intended to be — as Braunstein strongly indicates, and as the history of the separation of law and equity confirms.[2]
Pursuant to CPLR 2201, the court stays this action for 90 days from the date of entry of the order herein to allow either party to secure an order of transfer and removal to the Supreme Court under CPLR 325 and 326. In the event an order of transfer and removal is filed within the 90-day period, the stay is vacated forthwith at that time. In the event no such order of transfer and removal is filed within the 90-day period, this action is dismissed without prejudice as to all issues well pleaded herein, except, under CPLR 327, no further proceedings may occur in this court.
. For the purposes stated above only, the motion to file the amended pleadings to confirm to the proof is granted.

. The Legislature has not enacted any enabling legislation under article VI (§ 19, subd i) of the New York Constitution. And, since that subdivision is clearly not self-executing, as are other subdivisions of section 19, the provision is dormant.

. In New York, the adoption of the Field Code in 1848 abolished the procedural distinctions between law and equity. However, jurisdictional differences among our courts have perpetuated a need to understand the substantive differences. Money judgments invariably seek to compensate for past wrongs and ascertainable liquidated damages. They do not function well in respect to prospective and continuing, future obligations, arising from personal duties of status. Yet, here, the res judicata impact of this action at law would foreclose future litigation of this issue. (Oldham v McRoberts, 21 AD2d 231.) Actions at law, historically, are inept for these purposes. (See Lovell, English Constitutional and Legal History, ch 6, at p 219.)